# In the
# United States Court of Appeals
## for the Seventh Circuit

IN RE: JACQUELINE M. STERLING,

*Debtor-Appellant,*

---

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division, No. 2:23-cv-003499-PPS.
The Honorable Philip P. Simon, Judge Presiding.

## BRIEF AND APPENDIX OF APPELLANT
## JACQUELINE M. STERLING

SAMUEL A. SHELIST
SHELIST & PEÑA, LLC
29 East Madison Street
Suite 1201
Chicago, Illinois 60602
(312) 644-3900
(sshelist@shelistandpena.com)

*Counsel for Appellant*




Save As　　Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2021

Short Caption: In re: Sterling v.Southlake, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✔] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Jacqueline M. Sterling & Samuel A. Shelist

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Samuel A. Shelist

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and
None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
Jacqueline M. Sterling

Attorney's Signature: /s/ Samuel A. Shelist　　　Date: June 25, 2024

Attorney's Printed Name: Samuel A. Shelist

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes [✔]　No [ ]

Address: 29 E. MADISON ST., SUITE 1201, CHICAGO, IL 60602

Phone Number: 312-644-3900　　　Fax Number: 312-644-3901

E-Mail Address: sshelist@shelistandpena.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ..................................................... i

TABLE OF AUTHORITIES ................................................................................. iv

JURISDICTIONAL STATEMENT ........................................................................ 1

ISSUES PRESENTED FOR REVIEW ................................................................... 1

STATEMENT OF THE CASE ............................................................................... 3

I.     Introduction .............................................................................................. 3

II.    Background of the Discharge ....................................................................... 3

III.   Background of the Discharged Debt ............................................................. 5

IV.   State Court ................................................................................................ 5

V.    Pre-Trial Proceedings In Bankruptcy Court .................................................. 6

VI.   Answer and Affirmative Defenses ............................................................... 6

VII.  Trial Proceedings in Bankruptcy Court ........................................................ 7

VIII. Order Directing for the Defendants ............................................................. 9

IX.   Post-Trial Appeal to District Court .............................................................. 9

X.    Remand .................................................................................................. 10

XI.   Post Prove-up Attorney Fees Evidentiary Hearing ........................................ 10

XII.  Prove-Up Hearing and Appeal ................................................................... 13

XIII. Post Prove-Up Appeal to District Court ...................................................... 15

XIV. Appeal to the Seventh Circuit ................................................................... 15

SUMMARY OF THE ARGUMENT ...................................................................... 16

ARGUMENT ................................................................................................... 17

I.     STANDARD OF REVIEW ......................................................................... 18

II.    BURDEN OF PROOF FOR THE AFFIRMATIVE DEFENSE WAS ON DEFENDANT SOUTHLAKE AND THE COURT BELOW DID NOT   APPORTION SOUTHLAKE THE APPROPRIATE BURDEN ............ 19

III.     THE CREDITOR'S CONDUCT WAS REPREHENSIBLE AND THE
         BANKRUPTCY COURT'S PROVE-UP AND DAMAGES RULING
         FAILED TO COMPREHEND THE GRAVITY OF THE SITUATION........... 20

IV.      STERLING'S ONLY REMEDY IS CONTEMPT AND HER WRONGFUL
         LOSS OF LIBERTY AND JAILING, PER SE LOSS OF REPUTATION,
         AND EMOTIONAL DISTRESS ARE ELEMENTS OF HER
         DAMAGES FOR CONTEMPT BUT NOT INDEPENDENT
         CAUSES-OF-ACTION ....................................................................................... 22

V.       LOSS OF REPUTATION DAMAGES FOR *PER-SE* DAMAGES TO
         STERLING'S REPUTATION WAS PROVEN; THAT SHE 'GOT
         HER JOB BACK' AFTER BEING SUSPENDED IS NOT A
         DEFENSE TO IMPUTING CRIMINAL ACTS TO A PERSON .................... 22

VI.      FALSE ARREST ................................................................................................ 27

VII.     THE AWARD IS  UNCONSCIONABLE............................................................ 28

VIII.    PROCEDURAL POSTURE ON REMAND: HAVING PROVED-UP
         HER CASE, STERLING PROVED-UP DAMAGES AND THE
         DEFENSE WAS AN AFFIRMATIVE DEFENSE ........................................... 28

IX.      AN AFFIRMATIVE DEFENSE OF "CONTRIBUTORY" NEGLIGENCE
         IS SOUTHLAKE'S BURDEN AND IT CAN NOT BE PROVEN BY
         "CHANCE" OR SPECULATION ....................................................................... 28

X.       STERLING WAS THE PREVAILING PARTY ON APPEAL, ON REMAND,
         AT PROVE-UP AND HER ATTORNEY FEES SHOULD NOT BE
         "APPORTIONED" BY AN AFFIRMATIVE DEFENSE ................................. 33

XI.      COSTS AND SUBSEQUENT FEES: THE FAILURE TO AWARDS COSTS IS
         INDICATIVE OF THE BANKRUPTCY COURT'S RESISTANCE TO
         THE SEVENTH CIRCUIT'S MANDATE ........................................................ 35

CONCLUSION............................................................................................................. 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*1st Bank Southeast of Kenosha, Wisconsin v Westlake Harbor Terminals Inc.*,
670 F. Supp. 1421 (E.D. Wisconsin 1987)............................................................. 30

*Adams v Zayre Corp.*,
148 Ill. App. 3d 704, 499 N.E. 678 (1986)............................................................. 22

*Bauer v Gilmartin*,
459 B.R. 720 (8th Cir. 2011)................................................................................... 18

*Cox v Zale Delaware, Inc.*,
239 F.3d 910 (7th Cir., 2001) ................................................................................. 22

*In re Aliello*,
231 B.R. 684 (N.D., Illinois 1999) ......................................................................... 20

*In re Bishop*,
296 B.R. 890 (S.D. Georgia 2003) ......................................................................... 20

*In re Elk Grove Village Petroleum*,
562 B.R.708 (N.D. Ill., 2016) ................................................................................. 36

*In re Galmore*,
390 B.R. 901 (N.D. Indiana 2008)......................................................................... 21

*In re Herman*,
737 F.3d 449 (7th Cir. 2013) ................................................................................. 18

*In re MA*,
2011 WL 330156 ..................................................................................................... 18

*In re Spangler v Bryne*,
653 B.R. 573 (N.D. Illinois 2023) ................................................................... 19, 29

*Linneman v Vita Mix Corp.*,
970 F. 3d 621 (6th Cir. 2020) ................................................................................. 33

*McGrath v County of Nevada*,
67 F.3d 240 (9th Cir. 1994) ................................................................................... 34

*Moore v Target Stores, Inc.*,
571 P.2d 1236 (Ok., 1977) ..................................................................................... 23

*Muzikowski v Paramount Pictures Corp.*,
322 F.3d 918 (7th Cir. 2003) ................................................................................. 26

*Nelson v Steiner, et al.*,
    262 N.W.2d 579 (Iowa, 1978) .......................................................... 24-25

*O'Sullivan v City of Chicago*,
    474 F. Supp. 2d 971 (ND. Illinois 2007). ............................................ 24

*Ridgwell-Boltz v Colvin*,
    670 Fed. Appx. 651 (Mem) (2016) ..................................................... 34

*Robison v Weiboldt Stores*,
    104 Ill. App. 3d 1021, 433 N.E.2d 1005 (1st Dist. 1982) ...................... 24

*State Farm Fire & Casualty Co.*,
    987 N.E.2d 121 (2013) ..................................................................... 24

*Thames v Evanston Insurance Co.*,
    665 Fed. Appx. 716 (10th Cir. 2016) ................................................. 34

*Torres v United States of America*,
    953 F. Supp. 1019 (N.D. Illinois 1997) .............................................. 32

*Walmart v Jones*,
    533 So. 2d 551 (Ala., 1988) .............................................................. 23

*Wilborn v Ealy*,
    881 F.3d 999 (7th Cir. 2018) ............................................................ 18

## Statutes & Other Authorities:

28 U.S.C. § 157 ................................................................................... 1

28 U.S.C. § 158(a) .............................................................................. 1

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1334 ................................................................................. 1

Fran Lisa Buntman PhD., Race, Reputation, and the Supreme Court: Valuing
    Blackness and Whiteness, 56 U. Miami L. Rev. 1 (2001) ...................... 26

The Law of Reputation and the Interest of the Audience, College of William & Mary,
    Heymann, Laura A., "The Law of Reputation and the Interest of the Audience"
    (2011). Faculty Publications. 1181 .................................................. 26-27

Local Rule B 4002(1)(a)2 ...................................................................... 8

## JURISDICTIONAL STATEMENT

This appeal was an appeal from a Final Order on a Bankruptcy Appeal issued by the Northern District of Indiana, Hammond Division.

Bankruptcy Judge Ahler issued his Opinion on October 3, 2023 and Sterling filed an appeal to the District Court on October 11, 2023 (23-00349, Doc. 1).

District Court Judge Simon affirmed the Bankruptcy Court's Memorandum decision on June 10, 2024 (23-CV-0039, Doc. 14). Plaintiff Sterling filed her Appeal to the Seventh Circuit on June 13, 2024 in a timely manner (23-CV-00349, Doc. 16).

The Bankruptcy Court had jurisdiction because the contempt Adversary proceeding was a "core" proceeding. 28 U.S.C. § 1334, 28 U.S.C. § 157. The District Court had jurisdiction over the appeal. 28 U.S.C. § 158(a), 28 U.S.C. § 1331.

The Seventh Circuit has jurisdiction of appeals from the District Court final decisions, 28 U.S.C.§ 1291. The Seventh Circuit has jurisdiction to decide this case as a timely appeal was filed.

## ISSUES PRESENTED FOR REVIEW

Jacqueline Sterling, the plaintiff, was discharged in bankruptcy. Despite having received notice of the automatic stay and the discharge Order, Southlake Nautilus Health & Racquet Club, in pursuant of a $500 debt, sought and obtained a writ of arrest against Sterling. Sterling was arrested and held in jail for three-plus days. The sole method of redress for Sterling is a contempt proceeding in Bankruptcy court and this was filed via an Adversary proceeding. The Seventh Circuit reversed the prior Bankruptcy court for abuse of discretion. The Seventh

Circuit in the prior appeal held in favor of Sterling against Southlake Nautilus and remanded back to the Bankruptcy court for a hearing on damages.

The remand was assigned to Judge Ahler as the prior Bankruptcy judge had retired.

The Bankruptcy court entered a ruling that Sterling was fifty-percent 'contributorily negligent' in her own arrest and reduced her damages thus by fifty-percent. The affirmative defense of contributory negligence is the defendant Southlake Nautilus' burden to prove and that burden is by a preponderance of the evidence. The issue is whether the Bankruptcy court's finding was an error of law (in not providing the correct burden of proof) and whether the Bankruptcy court's finding was an abuse of discretion (in that there was no evidence to support such a finding).

The Bankruptcy court entered a finding in favor of Sterling with a very small damages award. Sterling having been jailed, suspended from her job, defamed, endangered her public gaming license, and having the stain of this civil arrest following her a decade later when she went to get another gaming position sought damages which compensate her for these actual injuries. The issue here is whether the Bankruptcy court's explanation of the standards for such damages was an error of law and whether its findings on these issues were an abuse of discretion.

The prevailing party, here Sterling, is entitled to attorney fees for prosecution of the contempt Adversary. Judge Ahler used a "proportionate" method to heavily cut the fees earned in this decade-long litigation, "applying" the plaintiffs alleged

contributory negligence to the fees. The issue presented is whether the Bankruptcy Court erred in heavily cutting attorney fees and refusing to comply with the Seventh Circuit remand which said "plus costs" as the Bankruptcy court refused to assess costs in favor of the prevailing party.

## STATEMENT OF THE CASE

### I.      Introduction

This case began with an Adversary Proceeding filed by Jacqueline Sterling, 12-A-02012. This was a "civil contempt proceeding" filed on June 25, 2012, Adversary paragraph 6.

Despite the notice of automatic stay and discharge, a creditor of Sterling issued execution on a money judgment and Sterling was arrested, was held in jail for three-and-a-half days, was suspended from her job, and a decade later still had the arrest record interfere with her obtaining a gaming license in Colorado, where she had moved to.

This section summarized the facts of this case since 2009 to the present time. Due to the extensive record and appeals, this fact section seeks to concentrate the review concerning the record concerning the Remand and Prove-up and this Appeal, however this section also provides the background to this litigation since its inception in 2009.

### II.      Background of the Discharge

Sterling was a debtor who had filed Chapter 7 bankruptcy, 2009-B-24206. Sterling was discharged on January 11, 2010 by Judge Klingeberger and notice was

sent to Southlake Nautilus Health & Racquet Club Inc. ("Southlake"). The notice was sent to the correct address at 240 W. 79th St., Merrillville, Indiana, 46410. Prior to the discharge, notice of the automatic stay was sent to Southlake at the same address. [The entire Plaintiff Trial Books were admitted into evidence, defendant Southlake had no trial Exhibits, 23-CV-00349, Doc. 8-5, page 9, Trial Transcript, 12-02102, Doc. 64, page 7].

Subsequent to and despite the automatic stay and discharge Southlake issued a rule to show cause on a citation to discover assets to collect a pre-existing and discharged debt (Trial Exhibit #3W). Southlake then issued a 'body attachment' on April 27, 2010 (Trial Exhibit #3X). The Lake County sheriff arrested Sterling on a Friday night while the Indiana state police were helping her change a flat tire. The arrest warrant was served March 16, 2011 (Trial Exhibit #3Y). Sterling's then bankruptcy lawyer filed an emergency petition on Monday, March 16, 2011 to get her released from jail, nothing she was discharged and that the creditor had been notified at the correct address (Trial Exhibit #3Z). Despite having received an email from the attorney, Southlake did nothing by their agent to seek Sterling's release (Trial Transcript, 12-02102, Doc. 64, page 121).

While Sterling was in jail, she was suspended from her job at Horseshoe Casino, where she was a poker dealer (Trial Exhibit #4C). This noted that "alleged criminal activity (either while on or off duty) is a basis for dismissal," id. Sterling was able to explain the situation to Horseshoe and she "returned back to work," id.

### III. Background of the Discharged Debt

Southlake was a work-out gym. Sterling signed a contract ("membership") with Southlake (Trial Exhibit #C). As there was a past-due balance on her membership, Southlake filed suit in Lake Superior Court on July 11, 2011 for $518.47, attorney fees, and costs (Trial Exhibit #L). Southlake obtained a money judgment for $468.47, attorney fees of $450.00 and costs on February 4, 2002 (Trial Exhibit #K).

From February 4, 2002 until the arrest on March 15, 2011 Southlake continued to execute on this judgment. After the arrest and incarceration, Sterling obtained counsel who made a pre-suit demand on April 3, 2011, which was ignored, and Sterling filed suit.

### IV. State Court

Sterling originally filed suit in Lake Superior Court during 2011. Discovery commenced and substantial work-product was received but the case was dismissed for lack of jurisdiction, the State Court holding this matter was solely subject to a Bankruptcy Court contempt.

While that case was briefly pending, Southlake's insurer, West Bend Insurance company, sent a reservation of rights letter (albeit not a denial) concerning coverage (Trial Exhibit #4L). The policy according to West Bend covered 'false arrest, detention, imprisonment, malicious prosecution, violation of the right to privacy, slander or libel,' id.

Subsequent to the State Court dismissal, Sterling filed the Adversary in Bankruptcy Court.

The Adversary complaint was the basis of the trial and remand prove-up proceedings. The complaint in 12-A-02102 indicates "this is a civil contempt proceeding". As damages for the contempt – not as a separate "cause of action" – Sterling alleged the prosecution was malicious, she was wrongly imprisoned, and she suffered extensive damages. These damages alleged were her loss of wage, humiliation in prison, humiliation in front of her employer, and that these were actual damages plus attorney fees. Sterling prayed for damages consequent to the contempt by Southlake of the automatic stay and discharge order.

## V.	Pre-Trial Proceedings In Bankruptcy Court

Defendant Southlake and their lawyers (who were then also defendants) filed motions to dismiss which were denied on January 31, 2013 (23-CV-00349, Doc. 14). Extensive discovery ensued. During discovery, it turned out the lawyers for Southlake had "lost" their collection file and collection Excel work-sheets also did not include the Sterling arrest and demand (12-A-02102, Doc. 81, page 2, 3, Trial Transcript, 12-02102, Doc. 644, page 72).

## VI.	Answer and Affirmative Defenses

In what became the central issue of the case, Southlake filed an answer and affirmative defenses on September 14, 2012 (12-A-02102, docket #8). Sterling filed a general denial to the affirmative defenses on June 16, 2014 (23-CV-00349, Doc. 50).

Defendant filed its defenses (12-02102, Doc. 8) that alleged Sterling's "conduct and fault" are the cause of her injuries or via her then bankruptcy attorneys (para. 3-4-5). Southlake alleged Sterling failed to "mitigate" her damages (para. 6). Southlake alleged Sterling's "conduct" "contributed to the events." This is the key to the entire prove-up and remand.

## VII. Trial Proceedings in Bankruptcy Court

A two-day Trial commenced before Judge Klingeberger. Due to the extensive record, this section seeks to briefly review the parts of the trial central to the Seventh Circuit remand and prove-up.

Sterling called Wanda Leggett, the chief clerk for some twenty-six years at the Lake Superior Clerk, familiar with procedures at the Clerk and then-State Court Judge Moss. At the time of these events, files were not kept electronically but in paper. (12-A-02102, Doc. 64, page 30-2). Clerk Leggett indicated that if a notice came in from a bankruptcy court without identification of the State Court docket and information it would be 'disregarded' (page 32). Clerk Leggett said if a notice from bankruptcy came in State Court Judge Moss would not have the file pulled and an outstanding writ of arrest would stay active (page 33). If an attorney filed a Motion to pull the file and quash a writ because of bankruptcy the file would be pulled and that was a typical procedure (page 34, 39).

Sterling testified (12-A-02102, Doc. 64, page 180). She was a poker dealer earning more than $25.00/hour, but most of her earning were tips. She had a flat tire on Route 30 and a Dyer policeman arrested her on the Southlake warrant (page

182). She had never been arrested before (page 183). Sterling was handcuffed on both hands (page 186). Sterling was taken to Dyer Police Station handcuffed, and she was fingerprinted (page 187). She was kept in a holding cage (page 187). Sterling was taken to Crown Point jail in handcuffs, where she was fingerprinted again (page 188). Sterling was given prison clothes and kept in a holding cell with five other women (page 189). Sterling was in the holding cell all night with eventually twenty other women (page 190). She was eventually transferred to a cell (page 192). Sterling had been scheduled to work the weekend (page 193). She reported to the gaming commission she had been arrested but she got the gaming license restored (page 194). Sterling described the deplorable conditions of the jail (page 197). Sterling lost about ten-hours per day and tips (page 213). She was released on Monday afternoon after her lawyer filed an emergency Motion.

At the conclusion of plaintiff Sterling's case, Southlake (and then-defendant Austgen) moved for a directed finding. Relevant to the issues at hand in the Remand is that Southlake briefly argued their affirmative defense. Albeit rejected by both Judge Klingeberger and the Seventh Circuit, Southlake argued that Sterling should have sent notice of the bankruptcy to Lake Superior Court and the Austgen law firm (12-A-02102, Doc. 78, p 2). [As noted the Court found no local rule required notice to the Austgen law firm and Local Rule B 4002 (1)(a)2 indicates notice was to be sent to a local court where a collection case was pending]. As discussed, the Motion for directed finding was taken under advisement and Judge Klingeberger had defendants put on their case anyway.

Defendants only called one witness, Shawn Cox, an attorney (12-02102, Doc. 65, page 23). Cox said the Local Rule requires notice to the Lake Superior Court and "by implication" the Austgen firm (page 275). Cox had never been certified as an expert by any court (page 39). Cox said it was "highly unlikely" the arrest warrant would not have been recalled (page 40). Cox acknowledged "someone would have to bring it [the writ] to the attention of the court" for it to have been recalled (page 42). Cox acknowledged the Local Rule does not require notice to creditor counsel (page 42-3).

## VIII.   Order Directing for the Defendants

Judge Klingeberger concluded the trial on November 13, 2014. Judge Klingeberger issued a Memorandum Opinion granting defendants a directed finding. Albeit reversed in part by the Seventh Circuit, a portion of the Order is concerned with the issues of this Appeal.

## IX.    Post-Trial Appeal to District Court

Subsequent to Judge Klingeberger's Memorandum granting the motion for a directed finding in favor of Southlake and the Austgen firm, Sterling filed an appeal to District Court.

The District Court affirmed Judge Klingeberger in an Order on August 2, 2018 (12-B-02102, Doc. 96). In that Order, the District Court said, "as sometimes is the case, the hurt and suffering Sterling experienced cannot be remedied through legal channels."

Sterling filed its appeal to the Seventh Circuit.

## X. Remand

The Seventh Circuit reversed as to Southlake. The Seventh Circuit issued its Mandate on September 4, 2019 with its judgment "with any Bill of Costs, if any" (12-A-02102, docket #97). The Court held this case was akin to "debtor's prison."

The Seventh Circuit held that Southlake clearly had notice of the automatic stay and discharge but Southlake "failed to notify" attorneys Austgen of the situation. The Seventh Circuit reviewed whether the defendant Southlake was in willful violation and thereby contempt. The Seventh Circuit concluded that Southlake's motion for a rule and later an arrest warrant via their attorney Austgen was willful contempt and the Bankruptcy Court "erred as a legal matter". The Cour indicated this "regrettable event could have been avoided had Sterling complied with the Local Rule and left the Bankruptcy Court to determine in discretion whether to factor this into a damages calculation.

## XI. Post Prove-up Attorney Fees Evidentiary Hearing

The case was remanded to the Bankruptcy Court for a hearing on damages. This was assigned to Judge Ahler, who heard the matter first on October 22, 2019.

There were two issues alleged, Sterling's damages and attorney Fees (Transcript, 12-02102, page 7). Southlake counsel argued the Seventh Circuit "got ahead of itself" and that they have an Affirmative defense (page 9). Sterling argued that Southlake has been determined in contempt and the only issue is damages (page 9). Judge Ahler indicated he would have not handled the matter the way the Lake Superior Court handled it and Sterling counsel objected to relevance (page 14).

The Court set the matter over for pre-trial briefs and setting of a hearing on damages.

Sterling and Southlake filed extensive briefs before Judge Ahler. In Sterling's brief, Sterling argued that the evidence was conclusive that whether a 'notice' from the Sterling bankruptcy lawyer went to the Lake Superior Court or not, the file would not have been pulled, the writ would not have been quashed, and thereby Southlake's affirmative defense was not proven 'more reasonably true than not' (23-CV-00349, Doc. 4-3, page 2). Sterling argued that the contempt caused extensive damages to Sterling in terms of what she went through in jail, loss of wages, being suspended at Horseshoe, and her reputation sullied at Horseshoe continuing on to her obtaining a new gaming license, wrongful detention, and pain and suffering (id., page 7-8). Sterling further argued that the issue of the Local Rule was an affirmative defense which Southlake had the burden to prove-up (id., page 12). Sterling argued the Local Rule does not require 'notice' to Southlake's then collection counsel, Austgen (id, page 23).

Southlake argued the violation of Local Rule was an absolute bar to any recovery by Sterling (23-CV-00349, Doc. 4-3, page 28) and that the damages claims were excessive.

Sterling's lawyer filed a Fee Petition on October 16, 2023 (23-CV-00349, docket 4-3). In the Fee Petition, Shelist appended an Affidavit (id., page 13 -16 of the petition) and an Excel spread sheet of the fees for 483 hours and a total of $246,078. In the Fee Petition, Shelist alleged that defendant Southlake failed to

meet the burden to prove-up its affirmative defense, that fees were required for the violation of the automatic stay and discharge orders, reviewed the extensive record at trial and appeal(s), that there had been no offer, and that the Fees and hourly rate were appropriate for Shelist's experience and the complexity and intensity of this litigation.

Southlake filed an Objection to the Fee Petition on October 16, 2023 (23-CV-00349, Docs. 4-3, page 97). They argued the fees were excessive.

Judge Ahler determined that Shelist needed to testify in support of Sterling (and his) Fee petition in an evidentiary hearing (23-CV-00349, page 10) and local counsel was obtained to put Shelist on the stand.

Shelist testified and was subject to cross-examination on May 12, 2022 (12-02102, Doc. #137). Shelist testified to his practice since 1986, that he completed in excess of 50 jury trials and in excess of 100 bench trials, primarily in Chancery court, and has argued a series of 30 appeals in the past thirty-years (page 16, 20). Shelist testified this case was sui generis because of Sterling's jailing and its consequences (page 17). Shelist testified that subsequent to the trial, Sterling was applying for a gaming license in Colorado and the arrest had to be explained for her to get her license (page 20). Shelist testified to the pre-trial procedures, discovery, five Trial Exhibit Books, and extensive briefing before trial, after trial, and on appeal, and the conflict between the Austgen firm and Southlake in legal analysis (page 23-24). There was no offer prior to the Seventh Circuit ruling in 2019 (page 43, 63). The matter was taken under advisement. [Relevant to the later arguments

on the 'reasonableness of fees' Southlake counsel had confirmed there was no offer (23-CV-00349, page 10).]

Relevant to the issues on remand, Southlake asserted that "if the notice [to Lake Superior Court] had been property provided, then Sterling's arrest would not have occurred because the warrant would have been recalled" (23-CV-0049, Doc. 4-3, page 5). Southlake argued that this issue is the "proximate cause of Plaintiff's injury and is a bar to any financial recovery" albeit Southlake did not argue this bar applies to attorney fees (23-CV-00349, Doc. 4-3, page 2).

## XII.   Prove-Up Hearing and Appeal

Judge Ahler issued his 'Memorandum Opinion on Damages and Attorney Fees following Remand' on October 3, 2023 (12-A-02102, Doc. #147).

In his ruling, Judge Ahler indicates "Leggett testified that the state court judge presiding over Sterling's collection case did not require that a case file by brought to chambers for review upon the Clerk's Office receiving a bankruptcy notice and as a result an existing bench warrant would remain active", However, if the notice had been docketed a warrant would not have issued (23-CV-00349, page 240). Judge Ahler indicated if the Local Rule notice had been sent the Court "would likely" have reviewed the file and not have issued the warrant. On this issue, the Court concluded the Local Rule does not require notice to Southlake's then collection attorney (page 246). The Court concluded this situation "may have been avoided had" the notice went to Lake Superior Court (page 247) and said, "there is a chance that much of the litigation could have been avoided" (page 248). Judge

Ahler distinguished what may have occurred had the notice went to Lake Superior Court prior to the writ issuing and what may have occurred had the notice went to Lake Superior Court after the writ issued.

Judge Ahler found Sterling and Southlake equally responsible for Sterling's damages (page 248).

Judge Ahler concluded that Sterling must prove "actual loss" by a "preponderance of the evidence" and "proven injury or loss" (page 243). In terms of Sterling's damages, the Court found Sterling was entitled to lost wages of $1449 reduced to $724 (page 248). The Court found Sterling was entitled to $18,000 in damages for emotional distress and reduced this to $9,000 (page 251).

Judge Ahler found against Sterling on loss of reputation, apparently because she was able to go back to work at Horseshoe and obtain a Colorado gaming license (page 251). Judge Ahler found against Sterling on wrongful detention as the Court found the Sheriff arrested her on a proper writ. The eventual award was $9274 (page 252).

As for attorney Fees, the Court found that the Shelist Fee Petition in terms of Hourly rate was appropriate and not excessive (page 258), but found "excessive charges" of 85.81 hours and reduced the fees to $198,710.00 (page 263). The Court reduced Shelist's Fees by "apportionment" of 50% to $99,355.00 (page 264).

Within 30 days of the Memorandum Opinion on October 16, 2023 Sterling filed an Appeal to the District Court (23-CV-0039, Doc. #4-2).

### XIII.  Post Prove-Up Appeal to District Court

Judge Ahler issued his Opinion on October 3, 2023 and Sterling filed an appeal to the District Court on October 11, 2023 (23-00349, Doc. 1). District Court Judge Simon affirmed the Bankruptcy Court's Memorandum decision on June 10, 2024 (23-CV-0039, Doc. #14).

Judge Simon held the standard of review to be 'abuse of discretion' (page 6). Judge Simon held that when Sterling "disclosed" her arrest to the gaming authorities and Horseshoe she defamed herself (page 14).  Judge Simon further upheld the judgment by the Bankruptcy Court that included no costs (page 16) because the Court found Sterling did not "provide proof" or delineate costs. Judge Simon upheld the "apportionment" of the affirmative defense to Shelist's fees.

Of note in conclusion, Judge Simon said "Sterling should never have spent one moment in jail. That it happened at all is astonishing. Southlake acted in a brutish and clueless way by thumbing its nose" at the Bankruptcy court to collect $500 "decade-old" debt (page 18).

### XIV.  Appeal to the Seventh Circuit

District Court Judge Simon issued his Memorandum Opinion on June 10, 2024 and Plaintiff Sterling filed her Appeal to the Seventh Circuit on June 13, 2024 in a timely manner (23-CV-00349, Doc. 16).

# SUMMARY OF THE ARGUMENT

This case involves an appeal from a hearing on damages, the 7th Circuit having previously reversed the Bankruptcy Court for abuse of discretion, confirming that the arrest and incarceration of Sterling was a willful contempt.

A hearing and argument were held in Bankruptcy Court. In summary, Plaintiff Sterling argues the Bankruptcy Court grievously erred in several areas. The Bankruptcy Court misconstrued the effects of contempt upon Sterling. The effects include per-se loss of reputation and wrongful arrest, and it is an abuse of discretion to deny her damages for these effects of the confirmed contempt. The Bankruptcy Court also erred in slashing Attorney Fees to the prevailing party and awarding no costs of court. This decision eviscerates the recompense due to Sterling for defendant's willful contempt. Finally, in the bigger picture, Defendant blames Sterling for defendant's willful contempt, i.e., her wrongful arrest in violation of the automatic stay and discharge, essentially arguing that Sterling was contributorily negligent. Sterling argues these points are based on speculation and do not meet defendant's burden of proof and that the evidence overwhelmingly points in the other direction. In summary, the Bankruptcy Court made errors of law and fact that demonstrate Plaintiff's entitlement to a reversal.

# ARGUMENT

Jacqueline Sterling, a young woman then in her 30's, was handcuffed, held in jail, and subjected to a series of humiliating experiences over a decades-long situation. It is a decades-long situation because even a decade after her arrest she had to "explain" away the situation to obtain a gaming license in Colorado, where she moved to. Sterling is an African-American woman and the cold, remorseless, and clinical ruling by the Bankruptcy Court does not compensate her for what she unfairly endured.

The ruling below does not even comply with the Seventh Circuit's remand. The remand said a judgment was entered "plus costs" and the Court below did not even give Sterling her costs of this decade-long litigation. In the face of obdurate litigation by Southlake and their insurer, the Court below slashed Sterling's lawyer's fees by an illegitimate "proportional" method. The Bankruptcy court's slashing of fees in this decade-long case makes it impossible for a lawyer to represent a client such as Sterling fairly in the face of obdurate opposition. To ignore the effect of what has happened and to consider its effect on an African-American woman in today's day-in-age is *willful blindness and not justice*. The trial Court criticized Sterling's counsel for discussing that Sterling is an African-American woman; the trial Court is wrong.

The court below must be reversed and at the conclusion of this brief Sterling asks the Court to remand to a different judge and not Bankruptcy Judge Ahler.

## I.    Standard of Review

The Seventh Circuit reviews a district court's decision to affirm a bankruptcy court *de novo*. When examining findings of fact, the Court applies a clear error standard.  *In re Herman*, 737 F.3d 449, 452 (7th Cir. 2013).  To determine whether the Bankruptcy Court committed an abuse of discretion – as the Seventh Circuit did in the prior appeal – the Court determines *de novo* whether the Bankruptcy court identified the correct legal rules to apply and examines factual findings under the clearly erroneous standard.  *In re MA,* 2011 WL 330156, *Bauer v Gilmartin*, 459 B.R.720 (8th Cir. 2011).  When there is a "definite and firm conviction a mistake has been made" a reversal is justified. *Wilborn v Ealy,* 881 F. 3d 999, 1006 (7th Cir. 2018).

In this case, portion of the decisions below were errors of law and portions of the decisions below were manifest errors of fact.

The key or predominate issue on Remand was the Southlake Affirmative Defense of contributory or comparative negligence based on the Local Rule.  The error of law was that the Court below did not assign the burden of proof for the Affirmative Defense to defendant Southlake. The Court below further erred as a matter of law by *not* evaluating the evidence by a preponderance of the evidence standard. Instead, the Court below speculated what "might" have occurred.  This portion of the decision below is subject to *de novo* review. In terms of the evidence on the Affirmative Defense the Court below abused its discretion in finding the arrest warrant "might" have been prevented by compliance with the Local Rule.

The primary issue relative to the contempt was damages. The Court below evaluated Sterling's loss of liberty, per se loss of reputation, and emotion distress as if 'causes-of-action' instead of damages consummate to contempt. This was an error of law and should be reviewed *de novo*.  As to the decision to award extremely small damages for what occurred here, "a definite and firm conviction a mistake has been made" can be the only conclusion, i.e., a manifest abuse of discretion.

The third issue was attorney fees and costs. The Court below heavily reduced the Fees sought by a "proportionate" method, i.e., "applying" Sterling's alleged contributory negligence to the Fees. This is an error of law entitled to *de novo* review.  The Court refused to comply with the Seventh Circuit's remand "plus costs" and this is also an error of law entitled to *de novo* review.

## II. BURDEN OF PROOF FOR THE AFFIRMATIVE DEFENSE WAS ON DEFENDANT SOUTHLAKE AND THE COURT BELOW DID NOT APPORTION SOUTHLAKE THE APPROPRIATE BURDEN

While Sterling had the burden of proof at trial and prove-up for damages, most of the prove-up hearing and subsequent arguments were based on Southlake's affirmative defense of comparative or contributory negligence.  Not once did the Court below seem to make clear that Southlake had the burden to prove their affirmative defense. "(T)he burden of proof on an affirmative defense belongs to the party raising it… the burden of proving them was" Southlake's and "it was not" Sterling's "burden to disprove them."  *In re Spangler v Bryne*, 653 B.R. 573, 583 (N.D. Illinois 2023).

As this brief discusses below, Southlake failed to meet that burden.  But it is important at the outset to note that the Bankruptcy court started out with a misunderstanding of the burden of proof which led to its errant Memorandum and ruling.

## III.   THE CREDITOR'S CONDUCT WAS REPREHENSIBLE AND THE BANKRUPTCY COURT'S PROVE-UP AND DAMAGES RULING FAILED TO COMPREHEND THE GRAVITY OF THE SITUATION

Even the District Court below found that Southlake acted in a "brutish and clueless way thumbing its nose at the bankruptcy process to collect a $500 decade-old debt" (23-CV-00349, Doc. 14, p 15).  Bankruptcy courts have granted punitive damages for a lot less, including repossession of a vehicle using the police. "(H)aving considered Bank's agent's reprehensible conduct specifically targeted toward this debtor, including all the actions to repossess despite notice of Debtor's bankruptcy, and in particular, the failure to halt when shown proof of the bankruptcy" the Court *In re Bishop,* 296 B.R. 890 (S.D. Georgia 2003) granted punitive damages.  As the record reflects, even when notified Sterling was wrongfully in prison, Southlake's agents did nothing to assist in getting her out of jail.  The emotional distress consequent to being suspended from one's employment, risking their professional license, and then having a decade later to defend oneself to get a gaming license is surely more serious and damning then the examples given within *in re Bishop.* This case is not the same caliber as a debtor merely threatened with a debt like with *In re Aliello*, 231 B.R. 684 (N.D., Illinois 1999).

The Bankruptcy court slashed the prevailing party's attorney fees based on an improper proportionate argument. The court below failed to honor the Seventh Circuit's own remand ["plus costs"]. The costs of this decade-long litigation in filing fees, the brief expenses and the record expenses would destroy Sterling's all-too-minimal award by the Bankruptcy court. This is untenable.

In the case of *In re Galmore*, 390 B.R. 901, 914 (N.D. Indiana 2008) a writ for arrest was not recalled. The *Galmore* court said, "More disturbing is that Galmore, *even after filing bankruptcy,* was at risk—even during something as mundane as a routine traffic stop—of being arrested, placed into custody, and then forced to post a cash bond in the amount of a pre-petition debt in order to secure her release.." Yet in this case, Southlake knew about the automatic stay and discharge and issued a writ of arrest. In the *Galmore* case, where no actual damages were proved, the court gave punitive damages. This case is demonstratively worse. Sterling wasn't "at risk" of being arrested during a "mundane traffic stop" – she **was** arrested during a mundane traffic stop when she innocently had the bad luck to have a flat tire.

The creditor's conduct was reprehensible and the consequences to Sterling devastating. The Bankruptcy court's cold ruling failed to really comprehend what occurred here.

## IV. STERLING'S ONLY REMEDY IS CONTEMPT AND HER WRONGFUL LOSS OF LIBERTY AND JAILING, PER SE LOSS OF REPUTATION, AND EMOTIONAL DISTRESS ARE ELEMENTS OF HER DAMAGES FOR CONTEMPT BUT NOT INDEPENDENT CAUSES-OF-ACTION

Sterling has one remedy: to punish the creditor, Southlake, for contempt for violating the automatic stay and discharge order. *Cox v Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir., 2001). Sterling can not seek recompense in State Court or from a jury. The proper award is for "contempt" as a total figure, and the damages while described in different categories should still be for contempt.

If only Sterling could have sought a jury. In *Adams v Zayre Corp.*, 148 Ill.App.3d 704, 499 N.E. 678 (1986) a customer was held for less than a half hour, searched, and humiliated by store security thinking she had shop-lifted (when she had not). The jury awarded her over $30,000, more than her original complaint. If only Sterling could seek such a remedy from a jury! But she can't. The adversary complaint is for contempt, and her damages include loss of reputation, loss of her liberty, and emotional distress. The Court below seemed to believe that Sterling needed to prove-up common law causes-of-action as if this were a state court jury trial. That is incorrect. The cause-of-action is contempt. Sterling's resulting damages are described as loss of reputation, loss of liberty and emotional distress.

## V. LOSS OF REPUTATION DAMAGES FOR *PER-SE* DAMAGES TO STERLING'S REPUTATION WAS PROVEN; THAT SHE 'GOT HER JOB BACK' AFTER BEING SUSPENDED IS NOT A DEFENSE TO IMPUTING CRIMINAL ACTS TO A PERSON

In the opinion below, the Bankruptcy court refused to grant Sterling damages for loss of her reputation. Yet Sterling has proved that Southlake imputing to her a

quasi-criminal act is in fact a per-se loss of reputation *as an element of her damages for Southlake's contempt* of the Bankruptcy court.

In analyzing Sterling's position, the Bankruptcy court noted that a arrest is grounds for dismissal at Horseshoe (her employer) and ground to lose her gaming license. Because of the arrest, nearly a decade after these events, Sterling had to hire counsel and "explain" her arrest to the Colorado gaming authorities so as to obtain her gaming license. But in blithely dismissing these concerns, the Bankruptcy court said Sterling was suspended but got her job back, she was able to get her gaming license in Colorado, and thereby the Bankruptcy court assumed this arrest didn't "impact" her reputation in "any appreciable way." This misunderstands what *per se* damages are.

Southlake issued an arrest warrant, published it to the Lake Superior Court, with the intent that Sterling would be arrested on a debt that no longer existed since it was extinguished by the discharge. It was placed on her record at Horseshoe. It is on her permanent public records and she had to explain it in Colorado. The only way to fairly review what happened to Sterling is to say Southlake '*imputed criminal conduct and misconduct'* to Sterling and *knew* the warrant would be published and executed upon. A civil arrest record can't be expunged. It is searchable on the internet today. When Southlake issued that request for a rule and a writ of arrest they hurt Sterling's reputation in a *"per se"* manner. A trier of fact may award "substantial sum for this presumed harm even

without proof of actual harm." *State Farm Fire & Casualty Co.*, 987 N.E.2d 121, 152 (2013).

Sterling, an African American young woman, testified she had never been arrested, never been in jail, and that she never had any contact with the criminal justice system. It is a foreseeable result of any arrest that people would learn about the arrest and that an arrest would harm a person's reputation for honesty, for not being involved in criminal or quasi-criminal conduct, and this is a particular menace for an African American young person in society. "Reputation is fragile and once lost is not easily restored… it is that reputation which in part shapes one's very existence." *O'Sullivan v City of Chicago*, 474 F. Supp. 2d 971, 984 (ND. Illinois 2007). In *O'Sullivan,* the Court criticized the "truncated view" of the evidence by a defendant where a jury awarded the plaintiff $250,000.

"False imprisonment consists of the unlawful restraint, against a person's will, of that individual's personal liberty or freedom of locomotion" and in a case where a security guard at a store held a person for a few minutes for suspected theft a jury awarded more than the Bankruptcy Court. *Robison v Weiboldt Stores*, 104 Ill.App.3d 1021,433 N.E.2d 1005, 1008 (1st Dist. 1982).

In *Walmart v Jones,* a shopper alleged to have shoplifted was wrongfully detained by store security, and a jury verdict of $200,000 was upheld. *Walmart v Jones*, 533 So.2nd 551 (Ala., 1988). In *Moore v Target Stores, Inc.,* 571 P.2d 1236 (Ok. 1977) another shopper was wrongfully detained and then released at the police station and was awarded $40,000 and this was upheld. In *Nelson v Steiner, et al.,*

262 N.W.2d 579, 584 (Iowa, 1978) a lady was arrested for shoplifting and the court noted:

Of the twelve hours plaintiff spent in the jail, several were spent in a cold barren cell. During her stay she was fingerprinted and photographed. Her fingerprints were sent …A record of her arrest on the charges was formally made. The court clerks and a police officer called as witnesses testified the court file containing the charges and the police arrest record could be seen by any interested member of the public. The charges were apparently dropped but the records remained.

For these 12 hours, Plaintiff received a verdict of nearly $30,000. Each of these cases involves much less than what Sterling went through hand-cuffed, in jail, without female napkins, published to her employer, and with a permanent arrest that she still has to explain. The award by Judge Ahler is unacceptable.

As with the rest of this case, Sterling is unfortunately not permitted to seek compensation from a jury. But jury verdicts are only method of comparison to this *sui generis* case. Jury trial verdicts in cases with less injury are many times what Judge Ahler provided here below. There are no comparable cases where a bankruptcy Debtor was arrested, suspended from her job, and then had to explain the arrest again a decade later to obtain a gaming license all because Southlake issued an arrest warrant on a discharged five-hundred-dollar debt.

In the Bankruptcy court's cramped view, if someone is implicated in a criminal act, if she is suspended but gets her job back, the threat to her gaming

license and the necessity of 'explaining' the situation to her employer (and future employers) means Sterling was not "impacted." This is outrageous: it did not 'turn out all right for' Sterling. This ignores the fact that *the implication of a criminal or quasi-criminal act causes loss of reputation* as a Matter of Law. *Muzikowski v Paramount Pictures Corp.,* 322 F. 3d 918 (7th Cir. 2003).

For an African American young lady, it can only be said "what the Court failed to see was that notions of good moral character and other criteria of good public reputation may well be tied to racial and racist understandings of reputation" and this "evocation is especially dangerous and invidious in the context of the criminal justice system. As has already been noted there is a lengthy history of associating blackness with criminality". Fran Lisa Buntman PhD., <u>Race, Reputation, and the Supreme Court: Valuing Blackness and Whiteness,</u> 56 U. Miami L. Rev. 1 (2001), page 11, 18. To ignore the implication of criminal misconduct in an arrest that never should have occurred is to ignore reality. To ignore the implication of misconduct in an arrest of someone whose profession requires a sterling reputation in order to keep (and obtain) a gaming license is to ignore reality. To ignore the implication in an arrest to an African American young woman is to ignore reality.

Reputation, often Biblically called the "crown of the good name," is part of one's dignity. Sterling's reputation in the gaming community as a dealer is like any other reputational value, to be considered a person of good character and worth in the community. Individuals reputations are based on dignity and privacy, <u>The Law</u>

of Reputation and the Interest of the Audience, College of William & Mary,

Heymann, Laura A., "The Law of Reputation and the Interest of the Audience"

(2011). Faculty Publications. 1181.

Sterling proved beyond any measure that one of the key damage *consequent to Southlake's contemptuous issuance* of a rule and a writ of arrest was a *per-se* loss of reputation. The Court below erred.

## VI.    FALSE ARREST

Plaintiff Sterling was falsely arrested.  The Court below looked at this from the perspective of 'unlawful restraint upon one's movement or deprivation of one's liberty' but then concluded that since the police had a "valid" warrant all is well.

But the damages inflicted for contempt are indeed a *deprivation of one's liberty*, three plus days in jail, handcuffed, finger-printed, and treated as a criminal. False arrest is a *description* of damages for contempt, not an independent cause-of-action.  Sterling, as noted by the dismissal of the State court action, has no ability to file an independent cause-of-action and can only present her damages as part of a contempt finding.

There was no probable cause for the issuance of the writ – because the debt wasn't owed and was discharged and Southlake received notice of that.  The issue has nothing to do with the police. The Bankruptcy court's refusal to consider contempt in terms of false arrest appears to be a circuitous attempt to avoid insurance coverage to hurt Sterling even further. *Sterling suffered actual personal injury from the emotional distress of her loss or reputation and her wrongful arrest.*

The only method Sterling has for recompense is the contempt applicable under the Bankruptcy code.

## VII.  THE AWARD IS  <u>UNCONSCIONABLE</u>.

It remains Sterling's view that the award of some $9,000 is simply unconscionable for what happened to Sterling. A "definite and firm conviction a mistake has been made" is the only way to look at Judge Ahler's order.

## VIII.  PROCEDURAL POSTURE ON REMAND: HAVING PROVED-UP HER CASE, STERLING PROVED-UP DAMAGES AND THE DEFENSE WAS AN AFFIRMATIVE DEFENSE

The procedural posture on remand is important to review.

Sterling proved-up her case for contempt.  This was the ruling of the Seventh Circuit.  The prior Bankruptcy court having directed a verdict on contempt for Southlake erred.  Thus, when the case came back to the new Bankruptcy judge, it was for a prove-up on damages.  It was Sterling's job to prove-up her damages.  She did so. This brief argues the ruling on damages was not sufficient or correct in measure. But most of the argument taken up was Southlake's defense: their defense was an affirmative defense for which Southlake had the burden and failed to meet that burden.

## IX.  AN AFFIRMATIVE DEFENSE OF "CONTRIBUTORY" NEGLIGENCE IS SOUTHLAKE'S BURDEN AND IT CAN NOT BE PROVEN BY "CHANCE" OR SPECULATION

In the opinion below, the Bankruptcy court held Sterling 'played a role' in the resulting arrest.  The Bankruptcy court said "there is a chance" that the arrest would not have occurred or the situation "may have been avoided" had her then

Bankruptcy lawyer sent notice of the bankruptcy to the Lake Superior Court in Indiana. This analysis fails to consider that Sterling did not have the burden to disprove Southlake's affirmative defense, but that Southlake had the burden to prove-up its affirmative defense. The decision below nowhere considers that Southlake had the burden of proof on an affirmative defense.

An affirmative defense is not proven by what "may" or "could" have happened by "chance."

In an adversary proceeding such as this one, an affirmative defense is Southlake's burden to prove. "(T)he burden of proof on an affirmative defense belongs to the party raising it… the burden of proving them was" Southlake's and "it was not" Sterling's "burden to disprove them." *In re Spangler v Bryne*, 653 B.R.573,583 (ND. Illinois 2023). The court below never discussed or considered this at any point in its Memorandum.

In analyzing the affirmative defenses filed by Southlake, the Bankruptcy court compared them to contributory negligence because of the *sui generis* nature of this case. This meant the Bankruptcy court looked to decide whether the failure to send notice to the Lake Superior Court contributed to the arrest or caused the arrest.

Southlake primarily alleged in its pleadings and certainly at trial and in the post-trial submissions that the arrest was 'caused' by Sterling's then bankruptcy lawyer's failure to send notice to the Lake Superior court. This puts the cart before the horse. Southlake issued the arrest warrant despite having notice of both the

automatic stay and the discharge order. There is no dispute Southlake *issued* the arrest warrant *after* Sterling was discharged. The proximate cause of this disaster for Sterling remains simple: a creditor who had the knowledge of the automatic stay and discharge and despite that knowledge via its agents issued an arrest warrant. Southlake's 'thumbing its nose' at the Bankruptcy process is the proximate cause of all that occurred.

In *1st Bank Southeast of Kenosha, Wisconsin v Westlake Harbor Terminals Inc.,* 670 F. Supp. 1421, 1430 (E.D. Wisconsin 1987) the Court explained the difference in these concepts and said, "there was sufficient evidence that Wojtyn was contributorily negligent with regard to his death, but not with regard to causing the movement of the line which caused the initial injury". This analysis fits our case: the *initial injury was caused by Southlake issuing the writ of arrest despite having already received the discharge*. The 'proximate cause' of Sterling's arrest was Southlake issuing the arrest warrant.

The Bankruptcy court's error in reasoning and failure to understand how an affirmative defense of contributory negligence works can be explained in its own explanation of what happened in Lake Superior Court.

The Lake Superior chief-Clerk (who worked there twenty-six years) indicated once a writ of arrest was issued the 'paper file' would *not* have been 'pulled' to the attention of the Lake Superior Court judge so as to inform him or her to recall or quash the arrest. However, the Bankruptcy Court turned this upside down and asserted that *if* the bankruptcy notice had been sent to the Lake Superior Court

*before* the arrest had been requested that the Lake Superior Court judge "*likely* would have reviewed the court's file prior to issuing any" warrant. There is no evidence in the Record whatsoever that the Lake Superior Court's procedures would have been different if the 'notice' had been sent to them prior to the writ *or* after the writ: there is no evidence that such a paper 'notice' had any method of getting into their files to be pulled and dealt with by a judge.

The only evidence is the 'notice' would not have caused anything to happen in their 'paper' file system *absent* a lawyer motioning the matter up.

*Not coincidentally,* when Sterling was incarcerated, her then Bankruptcy lawyer notified Southlake's law firm, but Sterling only got out of jail on Monday afternoon because an emergency motion was filed in Lake Superior Court. (The 'expert' hired by Southlake and attorneys Austgen testified to the same thing. That witness said "**someone would have to bring it [the writ] to the attention of the court**" **for it to have been recalled** (12-02102, Doc. 65, page 42).

In other words, just as the chief clerk from the Lake Superior Court testified to, nothing happened with notices unless someone motioned them up. The mere sending of a notice would not have changed anything. The Bankruptcy Court's speculation on what would have occurred *if* circumstances had been different is of no consequence. The Bankruptcy Court – in attempting to help Southlake's affirmative defense along – speculated on circumstances that didn't occur.

The affirmative defense filed by Southlake must be proven by Southlake by a preponderance of evidence. Notwithstanding the Bankruptcy Court's obvious

loathing of criticizing the local Indiana court's then-procedures, a point he admitted when saying as a former Indiana state court judge he would not have handled the matter similarly, the fact is the court below speculated on what "might" have happened or that there "was a chance" of what could have happened. This is not evidence. This does not meet the burden of proof. It is proof of nothing. That the Lake Superior Court's then-procedures (prior to omnipresent email notice) were unfortunate should not be impressed against Sterling. That the Lake Superior Court's then-procedures can be strongly criticized and Judge Ahler was loath to do so is not to be impressed against Sterling.

Southlake did not prove the failure to send the 'notice' to the Lake Superior Court was the proximate cause of the arrest because "proximate cause is not established where the causal connection is contingent, speculative or merely possible." *Torres v United States of America,* 953 F.Supp. 1019, 1025 (N.D. Illinois 1997). The evidence is clear that the proximate cause of the arrest was Southlake issuing an arrest warrant despite having received both the automatic stay and the discharge order.

The Bankruptcy court both misstated the evidence existing in the Record and more urgently used the wrong standard: what "might" or "could" have occurred by a "chance" is not the correct legal standard to have considered Southlake's affirmative defense. The Court below grievously erred.

## X. STERLING WAS THE PREVAILING PARTY ON APPEAL, ON REMAND, AT PROVE-UP AND HER ATTORNEY FEES SHOULD NOT BE "APPORTIONED" BY AN AFFIRMATIVE DEFENSE

Sterling filed the Adversary complaint, survived motions to dismiss and went to Trial. After Trial, Sterling prosecuted an appeal to the District Court and then the Seventh Circuit, where oral argument was had. Upon remand, Sterling was required to bring the attorney's fees petition to Trial. After a very long delay, the Bankruptcy court (without citation to any authority) "applied" the affirmative defense used against Sterling to the fees and slashed her attorney's fees by fifty-percent.

The Bankruptcy court held that the fees in relation to the award were not disproportionate and the hourly rates reasonable using the lodestar method, rejecting the Southlake defense on this issue entirely. One of the reasons the Bankruptcy court held the fees were not disproportionate was Southlake's odious and obdurate refusal to settle this case. A party can refuse to settle but when they do so they should not be heard to complain about the time it took for them to lose. As the Court noted in *Linneman v Vita Mix Corp.*, 970 F. 3d 621, 633, 634 (6th Cir. 2020), attorneys are entitled to reasonable fees but one can't "keep his meter running" after a reasonable offer. Here there has been essentially no offer. The *Vita Mix Corp.* court said the most important factor for reasonable fees is the "degree of success obtained." Sterling won. To downward adjust the fees here on an arbitrary basis dreamed up by the Bankruptcy court is unfair, unjustified, and an abuse of discretion. This is all the more egregious in that the Court below refused to honor

the remand for "and costs," thus eviscerating the award to Sterling in the first place.

It is not without interest that discovery was conducted in the State Court case before it was dismissed because Sterling had to file for contempt in Bankruptcy court. This included deposition of the Lake Superior clerk, whose testimony at trial became essentially the central testimonial evidence eviscerating the affirmative defense.  It is not without interest because the Bankruptcy Court disallowed Fees for such work.  This should be reversed.

A series of courts have held "proportionate" reductions are arbitrary and an abuse of discretion. *Thames v Evanston Insurance Co.,* 665 Fed. Appx. 716 (10th Cir. 2016), *Ridgwell-Boltz v Colvin*, 670 Fed. Appx. 651 (Mem)(2016), *McGrath v County of Nevada,* 67 F. 3d 240 (9th Cir. 1994). The Bankruptcy court cited no authority to justify its fifty-percent reduction in attorney fees because there is none. The fifty-percent reduction "applying" the (not proven) affirmative defense by Southlake to Sterling's fees is an abuse of discretion and this Court should award not only all of the fees sought by the Fees subsequent which are considerable and include this brief and the District Court appeal, not to mention time spent helping Sterling in Colorado.

For a debtor such as Sterling to obtain recompense she must hire counsel. To not award that counsel the fees legitimately earned in a decade-long piece of litigation is manifestly unfair. It does not impress upon Southlake the true consequences of their contemptuous behavior. It deprives the prevailing party of

their just award. Such a ruling disincentives lawyers from representing debtors in such a situation. Moreover, the Bankruptcy court should have remembered this was a contempt proceeding against the dignity of the Bankruptcy court and its Orders. The Court below grievously erred here also.

## XI.   COSTS AND SUBSEQUENT FEES: THE FAILURE TO AWARDS COSTS IS INDICATIVE OF THE BANKRUPTCY COURT'S RESISTANCE TO THE SEVENTH CIRCUIT'S MANDATE

There has been significant litigation since the Bankruptcy court ruled.  First, there was the Appeal to the District Court and second, an appeal to the Seventh Circuit.  Extensive time has been spent. Sterling's attorney on remand should be awarded all of those fees without any arbitrary reduction.

The issue of costs is particularly troublesome.

The Seventh Circuit's remand said, "plus costs."  They were not "itemized" because the matter was not concluded.  Had the Bankruptcy court below issued a judgment "and costs" and had there been no appeal, Sterling would have filed a motion to itemize the costs.  The Bankruptcy court issued no reasoning on this issue, and the District Court's order self-appointed excuse for the Bankruptcy court's failure to enter a judgment "plus costs" is not excuse at all.  Attorneys have no reason to 'itemize' costs until the action is concluded. (Similarly, when the Seventh Circuit remand said "plus costs" plaintiff Sterling had not 'itemized' costs at that point either. This is because the excuse for not awarding costs in the decision below is no excuse at all).

First, the Seventh Circuit's ruling for costs is not a 'suggestion': "In addressing issues on remand from the District Court, this court is bound by both the mandate rules and the "law of the case" doctrine. ...The mandate rule makes clear that a lower court must "comply with the express or implied rulings of the appellate court" on remand." *In re Elk Grove Village Petroleum,* 562 B.R.708 (N.D. Ill., 2016). The refusal to award costs to the prevailing party has no basis, but it is also troubling because it is indicative of the Bankruptcy court's resistance to the remand. From the first, Judge Ahler made clear he believed his predecessor [despite having been reversed] was right.

Second: practical reality. The tiny nine-thousand dollars award will essentially be subsumed by the costs, and Sterling will be deprived of a realistic recovery. The Bankruptcy court – who indicated repeatedly his experience as an Indiana state court judge prior to his elevation of Bankruptcy court – is well aware of this *practicality*. To not award costs is part of the bigger picture of the Bankruptcy court's *lack of respect* for what Sterling went through. Sterling is entitled to costs and to file a Fee petition in Remand for all of the fees earned subsequent to the prove-up hearing, including the District Court appeal and this appeal.

## CONCLUSION

What happened to Sterling and its consequences was not fairly appreciated by the Bankruptcy court below. The damages award fails to compensate Sterling for the consequences of Southlake's odious and contemptuous conduct. Sterling

suffered emotional distress, loss of liberty, per se loss of reputation, loss of wages, and all this should be compensated as consequences of Southlake's contempt. The award below is simply unconscionable. The award does not recognize the consequences to Sterling, the work necessary by her counsel, or the importance of protection of the Bankruptcy system's own integrity in having the automatic stay and discharge Orders complied with by creditors. The Bankruptcy court decision to slash Sterling's lawyer's fees by a proportionate method is not legitimate and the decision not to award costs is manifestly in defiance of the Seventh Circuit's own remand Order "plus costs". Sterling prays this Honorable Court reverse the decisions below and remand to a Bankruptcy Court other than Judge Ahler and with clear instructions on remand and for all attorney fees and costs.

Respectfully submitted,

*/s/ Samuel A. Shelist*
Samuel A. Shelist
SHELIST & PEÑA LLC
29 East Madison Street, Suite 1000
Chicago, Illinois 60602
(312) 644-3900

*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 9,255 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Century Schoolbook style font.

Dated: August 27, 2024

/s/ Samuel A. Shelist
Samuel A. Shelist
Attorney for Appellant

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all materials required by Circuit Rule 30(a) and (b) are included in the Appendix.

*/s/ Samuel A. Shelist*
Samuel A. Shelist

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2024, the Brief and Appendix of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Samuel A. Shelist*
Samuel A. Shelist

# APPENDIX

# TABLE OF CONTENTS TO APPENDIX

Opinion and Order filed June 10, 2024 (Doc. 14) ..................................................... A-1

Judgment filed June 10, 2024 (Doc. 15) ................................................................. A-19

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JACQUELINE STERLING, | ) | Bkrtcy. Case No. 09-24206 |
| | ) | Adv. Proc. No. 12-2102 |
| Appellant, | ) | |
| | ) | |
| v. | ) | **Cause No. 2:23-cv-349-PPS** |
| | ) | |
| SOUTHLAKE NAUTILUS HEALTH & | ) | |
| RACQUET CLUB, INC., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

<u>**OPINION AND ORDER**</u>

Jacqueline Sterling appeals a Bankruptcy Court Order that awarded her damages and attorney fees totaling roughly $110,000 for the contemptuous behavior of her creditor, Southlake Nautilus, a local health club. Southlake attempted to collect a debt against Sterling that had been extinguished in bankruptcy. Sterling believes she is entitled to a larger award. But because Bankruptcy Judge Ahler did not abuse his discretion in arriving at a damage and fee award, his decision must be affirmed.

**Background**

This case arises from a 2001 debt of approximately $500 in unpaid membership dues owed by Sterling to the Southlake Nautilus Health & Racquet Club, Inc. Shockingly, this rather paltry unpaid debt has spawned over *two decades* of litigation: there was an initial collection action in state court, followed by a bankruptcy proceeding, then a wrongful arrest and detention of Ms. Sterling, an adversary

1

A-1

proceeding in the bankruptcy court, an appeal to this court and then a reversal in the

Seventh Circuit, which then led to another proceeding in bankruptcy court. It is this

latter proceeding which is before me now.

Here are the details: Sterling evidently didn't pay her bill to Southlake which

prompted Southlake to pursue a collection action against her in the Superior Court of

Lake County, Indiana. Southlake obtained a default judgment against Sterling in

February 2002, and over the course of the next decade, it aggressively sought to collect

on that judgment.

In September 2009, Sterling filed a Chapter 7 bankruptcy. [Bankr. Case No. 09-

24206.] A short while later, the Bankruptcy Noticing Center sent a notice to Southlake

that Sterling had initiated the bankruptcy. Southlake did not send a copy of this notice

to its attorneys at Austgen Kuiper & Associates, P.C. ("Austgen"), who represented

Southlake in the Lake County collection case. Nor did the Lake County judiciary receive

notice of Sterling's bankruptcy.

In December 2009, Southlake, through its attorneys at Austgen, filed a motion for

proceedings supplemental in the Lake County case to enforce the 2002 judgment

against Sterling. A month later, in January 2010, the bankruptcy court entered a

Discharge Order that discharged Sterling's financial obligations, including to Southlake.

The Bankruptcy Noticing Center sent a prompt letter to Southlake notifying it of the

Discharge Order. At this critical juncture, Southlake did not inform its attorney

(Austgen) or the Lake County judiciary of its receipt of the Discharge Order. But,

A-2

importantly, neither did Sterling, even though a local rule requires such notice. Here's what that rule says:

> Immediately upon the entry of an order for relief, give written notice of the bankruptcy to any court or other tribunal where an action or other proceeding is being maintained against the debtor, whether or not the matter has proceeded to final judgment, and to all the parties involved in any such action or proceeding.

N.D. Ind. L.R. B-4002-1(a)(2). On April 27, 2010, after Sterling failed to appear at a hearing on Southlake's motion for proceedings supplemental, the Lake County court, unaware of Sterling's bankruptcy case or the Discharge Order, issued a bench warrant for Sterling's arrest. That's when matters took a terrible turn.

About a year later, a police officer with the town of Dyer, Indiana stopped to assist Sterling with a flat tire. Upon learning of the outstanding April 2010 warrant for her arrest, the officer detained Sterling, and she ended up spending the weekend in jail. She was detained on Friday and Saturday night in a cell with more than 20 other women. They shared one open air toilet and did not have access to feminine hygiene products. On Sunday, the jail transferred Sterling to a different cell with a single cellmate.

Sterling's employer at the time, the Horseshoe Casino in Hammond, Indiana, suspended Sterling after her arrest. However, after her release, the Horseshoe Casino reinstated Sterling's employment later that same month. Sterling had to disclose her arrest to the Indiana Gaming Commission each year to renew her gaming license, though these disclosures did not prohibit the successful annual renewal of her license.

A-3

Following her arrest, Sterling first filed suit in state court to seek damages

against Southlake, Austgen, and David Austgen (the head of Austgen) for their part in

her March 2011 arrest in violation of the Discharge Order. Sterling's state court action

was unsuccessful, so on June 25, 2012, she initiated an adversary proceeding in

bankruptcy court against Southlake, David Austgen, and his law firm. [Adversary

Proceeding No. 12-02102.] Sterling sought to hold all three in civil contempt. The

bankruptcy court held a bench trial from November 12-13, 2014, granted defendants'

motion for judgment on partial findings to dismiss David Austgen individually from

the case, and ultimately entered judgment for Southlake and Austgen (the law firm) on

August 25, 2016. [Adversary Proceeding No. 12-02102, DE 87.] Sterling appealed the

judgment to this court, and the matter was assigned to Judge Van Bokkelen who

affirmed the bankruptcy court on August 2, 2018. *See Sterling v. Southlake Nautilus Health

and Racquet Club, Inc., et al.,* No. 2:16-CV-384, 2018 WL 3660058 (N.D. Ind. Aug. 2, 2018).

On appeal to the Seventh Circuit, Sterling challenged the district court's findings

that both Southlake and Austgen lacked the knowledge necessary to be held in

contempt for violating the Discharge Order issued pursuant to 11 U.S.C. § 524(a). The

Seventh Circuit affirmed the district court's decision with respect to Austgen but

reversed with respect to Southlake and held that Southlake, in pursuing its collection

efforts after the debt had been discharged, was in contempt. *In re Sterling*, 933 F.3d 828

(7th Cir. 2019). In remanding, the Seventh Circuit issued a reminder to debtors (and

their counsel) of the importance of compliance with Local Bankruptcy Rule B–4002–1(a)

A-4

and left "to the bankruptcy court's discretion whether to factor [Sterling's noncompliance with this rule] into the damages calculation." *Id.* at 836. So, the case was remanded to the bankruptcy court for a hearing on damages.

In the hearing on remand, Sterling sought damages for lost wages, emotional distress, false arrest, loss of reputation, and attorney fees. Southlake argued that Sterling was not entitled to any damages or, alternatively, that the bankruptcy court should reduce Sterling's damages and attorney fees because of her failure to comply with Local Bankruptcy Rule B–4002–1(a). Judge Ahler rejected the notion that a failure to comply with Rule B–4002–1(a) should prohibit any recovery, reasoning that such a result "could incentivize creditors to ignore a discharge order" and would "undermine the civil contempt finding against Southlake." [DE 4-2 at 16.[1]] But Judge Ahler commented that "this entire unfortunate occurrence may have been avoided had Sterling complied [with Rule B–4002–1(a)]." [*Id.*] On that basis, Judge Ahler split the baby assigning 50% fault to each side and thereby reducing Sterling's damages and attorney fees award by 50% to reflect "the role Sterling played in the resulting litigation." [*Id.* at 17.]

In particular, Judge Ahler found damages in the amount of $18,000 for the emotional distress Sterling endured by being wrongfully jailed for three days ($6,000 per day) plus $1,449 in lost wages. After applying the 50% apportionment, it resulted in

---

[1] DE 4 is the Bankruptcy Record filed with this case. This record includes Judge Ahler's October 3, 2023 Order that Sterling appeals in this case. I will cite to this record, including for citation to Judge Ahler's opinion, because it is comprehensive and the pages are numbered sequentially. The Court refers to the page numbers in the top right corner in blue that correspond to the docket entries for this appeal.

A-5

a total award of $9,724.50 in damages. Judge Ahler denied Sterling damages for loss of reputation and wrongful detention. Regarding loss of reputation, Judge Ahler held that Sterling had provided no evidence that her arrest and incarceration had impacted her reputation in an appreciable way and cited Sterling's reinstatement at work and renewal of her gaming license as evidence to the contrary. [*Id*. at 20.] Judge Ahler analyzed Sterling's wrongful detention through the lens of false arrest and held that Sterling failed to demonstrate a lack of probable cause. [*Id*. at 20–21.]

As for attorney fees, Judge Ahler awarded Sterling's lawyer the sum of $99,355. To repeat, this amount was arrived at after applying the 50% apportionment described above. In doing so, Judge Ahler struck certain of Sterling's requested attorney fees and denied Sterling's request for fees related to her unsuccessful attempt to pursue the violation of the Discharge Order in state court prior to initiating the present adversary proceeding. Judge Ahler reasoned that "fees incurred for initially bringing this case in the incorrect forum, should not be compensable." [*Id*. at 29.]

## Discussion

Appellate courts, as I sit in this instance, review a bankruptcy court's decision to impose sanctions for an abuse of discretion. *See In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000). A district court will reverse a bankruptcy court's decision as an abuse of discretion only when the "decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004).

A-6

Importantly, this standard means that I do not necessarily need to agree with the bankruptcy judge's decision "so long as the decision is within the range of options from which one would expect a reasonable trial judge to select." *In re Radcliffe*, 390 B.R. 881, 888 (N.D. Ind. 2008).

Sterling brings a broadside attack on pretty much everything Judge Ahler did. Her arguments can be organized into several buckets: (1) the validity of the 50% apportionment; (2) attorney fees; (3) the damage award; and (4) costs. I'll take up each argument in turn below.

1. **50% Apportionment of Sterling's Damages and Attorney Fees**

Sterling's principal argument is that Judge Ahler erred in his 50% reduction (or apportionment) of Sterling's damages and attorney fees. Recall that Judge Ahler applied the 50% apportionment because Sterling's failure to follow Rule B–4002–1(a) contributed to her damages (mainly, the weekend in jail). Sterling asserts two primary arguments that Judge Ahler made an error of law in his application of the 50% apportionment: (1) that he applied the incorrect legal standard for contributory or comparative negligence, and (2) that he lacked authority to reduce the awarded attorney fees.

Bankruptcy courts have broad equitable powers and discretion to award damages for a violation of a discharge injunction. *See Badovick v.Greenspan (In re Greenspan),* No. 10-8019, 2011 WL 310703, at *5 (B.A.P. 6th Cir. Feb. 2, 2011). Section 524 of the Bankruptcy Code does not contain a specific provision regarding enforcement for

A-7

a violation of a discharge injunction issued pursuant to that Section. Instead, "bankruptcy courts invoke § 105(a), which grants bankruptcy courts broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." *Laboy v. Firstbank Puerto Rico, et al. (In re Laboy)*, A.P. No. 09-00047, 2010 WL 427780, at *5 (Bankr. D.P.R. Feb. 2, 2010) (citation omitted). The Seventh Circuit previously held that Southlake's conduct violated § 524, so the existence of a violation of the discharge injunction is not at issue here. *See In re Sterling*, 933 F.3d. at 832–35.

Upon finding a willful violation of a discharge injunction, bankruptcy courts have exercised their broad equitable powers and discretion to award actual damages, damages for emotional distress, punitive damages, and attorney fees and costs. *See In re Wassem*, 456 B.R. 566, 572 (Bankr. M.D. Fla. 2009); *In re Greenspan*, 464 B.R. at *3–5. Some bankruptcy courts have exercised these same equitable powers and discretion to reduce the award of both damages and attorney fees where debtors failed to mitigate their damages. *See In re Mitchell*, 545 B.R. 209, 226-27 (Bankr. N.D. Ohio 2016) ("[D]ebtors have a duty to mitigate damages when faced with violations of the discharge injunction"); *In re Haltermon*, 592 B.R. 311 (Bankr. S.D. Ohio 2018).

Indeed, the Seventh Circuit in this same proceeding commented: "we note that this regrettable event could have been avoided had Sterling complied with Northern District of Indiana Local Bankruptcy Rule B-4002-1(a) . . . . We leave to the bankruptcy court's discretion whether to factor this into the damages calculation." *In re Sterling*, 933 F.3d at 836. This is simply another way of saying that, in the exercise of his discretion,

8

14

A-8

Judge Ahler could take the failure to mitigate damages into account. And following the Circuit's cue, that's precisely what Judge Ahler did here.

Sterling asserts that Judge Ahler erred as a matter of law in applying the "wrong standard of law to evaluate proximate cause" in considering Sterling's non-compliance with Rule B-4002-1(a) because "contributory or comparative negligence is based on actuality and not theoretical concerns." [DE 9 at 20–21.] But this is a *contempt* proceeding, not an ordinary negligence case. Cases like *In re Haltermon* and *In re Mitchell* prove that point. The bankruptcy court in *In re Mitchell* did not conclude that the creditor violated the discharge injunction but commented that the court would have declined to award damages and attorney fees because the debtor's lawyer failed to timely assert the protection of the discharge injunction in the relevant state court proceedings. 545 B.R. at 227–28. Similarly, in *In re Haltermon* the bankruptcy court reduced the requested attorney fees award because it held that the debtor's counsel failed to mitigate damages by not immediately notifying the court and opposing counsel in a state court proceeding of the existence of a discharge injunction. 592 B.R. at 321–24. In other words, just as the Seventh Circuit suggested in this very case, it is clear that bankruptcy courts have broad authority to reduce damages (and attorney fees) in contempt proceedings, and in doing so they are not bound by the typical standard for a finding of contributory negligence.

Sterling also argues that Judge Ahler premised his reduction of damages and attorney fees upon erroneous findings of fact and argued that even had Sterling

complied with Rule B-4002-1(a) it would have made no difference. But that is a factual finding that can only be reviewed for clear error. *See Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d at 588. Sterling points to the testimony of Wanda Legett, the former chief administrative officer of the clerk's office in Lake Superior Court. While Legett did testify as to issues with docketing and record keeping in Lake Superior Court proceedings, I do not find Judge Ahler's conclusions regarding the potential effect of Sterling's compliance with Rule B-4002-1(a) to be clearly erroneous. Rule B-4002-1(a) exists for a reason: to provide state courts with notice of bankruptcy proceedings. In addition, Sterling's arguments about delays in state court documentation ignore that nearly a full year passed between the issuance of the warrant for Sterling's arrest and her actual arrest. I find it reasonable for Judge Ahler to conclude that Sterling's compliance with Rule B-4002-1(a) could have mitigated her damages by preventing her arrest.

Upon consideration of *In re Haltermon* and *In re Mitchell*, not to mention legal authority confirming that bankruptcy courts can decline to award *any* damages or attorney fees for the violation of a discharge order, *see e.g. In re Hardej*, 563 B.R. 855, 866–67 (Bankr. N.D. Ill. 2017), I find that Judge Ahler did not abuse his discretion in reducing Sterling's attorney fees and damages award by 50% for a failure to comply with the important notice provisions of Rule B-4002-1(a). While I may have placed more blame for this fiasco on Southlake if I were deciding the issue in the first instance, that doesn't make Judge Ahler's decision an abuse of discretion.

A-10

**2.   Attorney Fees Related to State Court Proceeding**

Sterling also argues that she is entitled to attorney fees for the state court proceeding that she first initiated against Southlake, but ultimately lost, for a violation of the discharge injunction. This is a legal argument that I review *de novo*.

Sterling points me to *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486 (1989), but this case is not even close to being on point. In *Texas State Teachers Association*, the Supreme Court refined the definition of a "prevailing party" who is entitled to fee shifting pursuant to 42 U.S.C. § 1988. *Id.* at 790–93. Not only is § 1988 not relevant here, but the prevailing party in *Texas State Teachers Association* sought fees for prevailing on certain claims *in the same underlying suit*. By contrast, Sterling seeks attorney fees related to pursuit of a different lawsuit: her unsuccessful state court action. Sterling's situation is instead akin to *In re Cowan* in which the bankruptcy court denied a debtor's claims for attorney fees for defense of a state court action. 586 B.R. 337, 346 (Bankr. D. Idaho 2018) ("[T]he Court fails to understand Debtor's lawyer's decision to dispute the validity of the collection action in state court, as opposed to bankruptcy court . . . . [T]he Court declines to compensate him for his decision to litigate in state court.") I affirm Judge Ahler's decision to not award attorney fees for Sterling's unsuccessful state court action to enforce the discharge injunction.

**3.   Sterling's Challenges to the Amount Awarded**

Having addressed the issue of apportionment of damages and attorney fees, I

A-11

will turn now to Sterling's arguments about specific categories of damages. The categories of relief available to her were actual damages, damages for emotional distress, punitive damages, and attorney fees and costs. *See In re Wassem*, 456 B.R. at 572. The purpose of these categories of damages is to provide remedial and compensatory relief to the party who suffered the consequences of a violation of a bankruptcy court's order. *See Romanucci & Blandin, LLC* v. Lempesis, No. 16 C 9710, 2017 WL 4401643, at *6 (Bankr. N.D. Ill. May 4, 2017).

    a.  **Emotional Distress**

Sterling first argues that Judge Ahler erred in his award of $18,000 in damages for emotional distress ($6,000 for each day she spent in "debtor's prison"), which, subject to the 50% damage apportionment, resulted in a total award of $9,000. Sterling says this award is "unconscionable." But Sterling cites no case law to challenge Judge Ahler's calculation of emotional distress damages.

Judge Ahler relied upon *Goodson v. Goodson, et al., (In re Goodson)*, Case No. 17-41820, 2018 WL 722461 (Bankr. N.D. Ala. Feb. 5, 2018) to calculate Sterling's damages for emotional distress. In that case, a debtor spent four days in jail pursuant to a criminal contempt order even though the debtor had filed for bankruptcy and received an automatic stay. The court awarded $5,000 in damages for each night the debtor spent in jail. *Id*. at *13; *see also In re Bishop*, 296 B.R. 890, 897 (Bankr. S.D. Ga. 2003) (awarding $5,000 in damages for emotional distress that stemmed from the "serious threat of arrest."). Other bankruptcy judges have awarded far less in damages for emotional

distress caused by violations of bankruptcy protections, including those that resulted in

jail time for a debtor. *See In re Valentine*, 611 B.R. 622, 652 (Bankr. E.D. Mo. 2020)

(awarding a paltry $100 in damages for each night of incarceration). In short, the award

of $9,000 in emotional distress in this case appears to be within the norm and entirely

reasonable. It was not an abuse of discretion.

b. **Damages to Reputation and Defamation**

Next, Sterling argues that Judge Ahler erred in denying her request for damages

for a loss of reputation. [DE 9 at 23–26.] Judge Ahler concluded that Sterling "did not

provide any evidence that the arrest impacted her reputation in any appreciable way."

[DE 4-2 at 20.] On appeal, Sterling argues that the mere disclosure and explanation of

her arrest and detention, such as through the gaming licensure process, entitles her to

damages under a theory of *per se* defamation. [DE 9 at 23–26.]

Judge Ahler (and Southlake) view Sterling's claim for damages through the lens

of damage to reputation, while Sterling views her claim through the lens of defamation.

Sterling cites the case *Lovings v. Thomas*, 805 N.E.2d 442 (Ind. Ct. App. 2004) for the

proposition that imputation of criminal conduct is defamation *per se*. Sterling argues

that her disclosure and explanation of her arrest to state gaming boards and her

employer impute criminal conduct and therefore entitle her to damages for defamation

*per se*.

But this argument inverts the nature of a defamatory communication. Under

Sterling's theory, Sterling, not Southlake, is the one making the purportedly *per se*

13

defamatory communications about herself when she discloses her arrest to gaming license boards and employers. Moreover, to be actionable, a defamatory *per se* statement cannot be true. *See, e.g.*, *Ratcliff v. Barnes*, 750 N.E.2d 433, 436 (Ind. Ct. App. 2001) ("In order to show that a defamatory communication is actionable, a plaintiff must prove that the communication is false."). Here, Sterling's statements to gaming license boards and employers were truthful: she was indeed arrested and detained pursuant to the state court contempt order.

Sterling also gets nowhere if her claim is analyzed through the lens of a loss of reputation. As recognized by Judge Ahler, "[d]amages for loss of reputation are only available in actions for libel, slander, abuse of process, malicious prosecution and third-party contract interference." *Grieves v. Greenwood*, 550 N.E.2d 334, 338 (Ind. Ct. App. 1990). Sterling does not address any of these theories of reputational damages and she provides no evidence to support them. In fact, after her arrest Sterling maintained her employment (after reinstatement) and successfully renewed her gaming license each year. The arrest did not cause her to lose her job or prohibit an annual renewal of her license. And whatever time off she lost from work was accounted for by Judge Ahler in his award of lost wages, which Sterling does not appeal. Nowhere in Sterling's briefing does she provide evidence that her arrest has prohibited her ability to seek employment in the gaming industry. Indeed, it appears from Sterling's briefing that she recently achieved licensure and employment in a new state. I concur with Judge Ahler's decision to deny Sterling's claim for reputational damages and find that he did not abuse his

A-14

discretion in that finding.

       c. **Damages for Wrongful Detention**

Sterling argues that she is also entitled to damages for "wrongful detention" or "false arrest." [DE 9 at 26–27.] At the outset, I'm not sure I see the point of trying to shoehorn what happened here into some independent legal theory. (The same could be said of her "defamation" claim addressed in the preceding section). Recall (again) that this is a contempt proceeding. The goal was to award Sterling damages for the harm that Southlake brought upon her by ignoring the discharge order.

Nevertheless, Judge Ahler analyzed Sterling's claim for "wrongful detention" as a claim for false arrest and determined that Sterling had not satisfied the requirement for detention without probable cause. [DE 4-2 at 21.] On appeal, Sterling vaguely asserts that "wrongful detention" is a separate cause of action than false arrest and seeks to cast her arrest as an arrest based on fabricated evidence. In support of her argument, Sterling cites *Hallom v. City of Chicago*, No. 1:18 CV 4856, 2019 WL 1762912 (N.D. Ill. Apr. 22, 2019). In *Hallom*, the court analyzed a motion to dismiss a 42 U.S.C. § 1983 action against the City of Chicago and three police officers for allegedly fabricating that the plaintiff pointed a gun at two officers. *Id*. at *1. The plaintiff was exonerated at trial and sought damages under a theory of wrongful pretrial detention. *Id*. at *2.

The elements of wrongful detention have not been explicitly articulated by the Seventh Circuit, but "[t]he consensus among district courts on the elements of an unlawful pretrial detention claim . . . is the following: defendant[s] (1) caused (2) a

seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Bahena v. Kennedy*, No. 17 CV 8532, 2021 WL 8153974, at *6 (N.D. Ill. Oct. 25, 2021) (internal citations omitted). Importantly, "probable cause defeats such a claim." *Id*. The same is true for Indiana law. *See Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) ("A defendant may be liable for false arrest when he or she arrests the plaintiff in the absence of probable cause to do so.") (internal citations omitted).

The warrant in this case *was* based on probable cause—Sterling failed to appear at the state court hearing which prompted a bench warrant to be issued. Therefore, there was no error on the part of Judge Ahler in not awarding separate damages for Sterling's wrongful detention or false arrest.

### d. **Costs**

Finally, Sterling argues that Judge Ahler "refused" to award costs. [DE 9 at 30.] That doesn't strike me as a fair characterization of what happened. As best I can tell, Sterling never clearly defined for Judge Ahler what costs she was seeking. Based on her briefing here, it appears that Sterling seeks an award for costs of the filing fees associated with pursuing this case as an adversary proceeding in bankruptcy court and on appeal before this district court and the Seventh Circuit. [*Id*. at 31.]

In a bankruptcy proceeding, the "court *may* allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Fed. R. Bankr. P. 7054(b)(1) (emphasis added). In contrast, Federal Rule of Civil Procedure 54(d)

A-16

provides for mandatory award of costs: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—*should* be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1) (emphasis added). However, the Seventh Circuit has applied the same presumptive cost shifting standard of Rule 54(d) to Bankruptcy Rule 7054(b). *See Mungo v. Taylor*, 355 F.3d 969, 978 (7th Cir. 2004) ("Although Bankruptcy Rule 7054 provides that the court *may* award the prevailing [party] costs, the courts have held that there is a rebuttable presumption that the prevailing party is entitled to costs.") (emphasis in original). As a result, "[g]enerally only misconduct by the prevailing party worthy of a penalty . . . or the losing party's inability to pay will suffice to justify denying costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997) (internal citation omitted).

A district court's denial of costs to the prevailing party must be accompanied by an explanation of "good reasons" for the denial. *Mungo*, 355 F.3d at 979. An appellate court, as I sit in this case, reviews a lower court's decision to impose costs for an "abuse of discretion." *Id.* at 978. Sterling is correct that Judge Ahler did not explain the lack of an award of costs, but this appears to be because Sterling failed to specify the costs that she seeks. Sterling bears the initial burden of establishing that each documented cost that she seeks falls within the list of permissible costs in 28 U.S.C. § 1920 and to demonstrate that the costs were "reasonable and necessary." *Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp. (In re Schwinn Bicycle Co.)*, 210 B.R. 764, 769 (Bankr. N.D. Ill. 1997). In both its briefing before this Court and its Fee Petition before the bankruptcy

A-17

court [Case No. 12-02102, DE 129; DE 4-3 at 32–43], Sterling failed to delineate the "costs" that she claims Judge Ahler did not award. Because Sterling has not provided proof of what costs were reasonable and necessary to this adversary proceeding, I am unable to award any costs in addition to the attorney fees that Sterling sought in her fee petition. *See In re Schwinn Bicycle Co.*, 210 B.R. at 769–72.

### Conclusion

Ms. Sterling should have never spent one moment in jail. That it happened at all is astonishing. Southlake acted in a brutish and clueless way by thumbing its nose at the bankruptcy process all to collect a $500-decade old debt. In order to address this kind of appalling behavior, bankruptcy courts are afforded wide discretion to award damages, and Judge Ahler exercised that discretion here. His award of $9,724.50 in damages and 99,355 in fees and was not an abuse of that discretion.

For the reasons set forth above, I AFFIRM Judge Ahler's Memorandum and Opinion [Adversary Proceeding No. 12-02102, DE 147] dated October 3, 2023.


SO ORDERED.

ENTERED: June 10, 2024.

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**

A-18

AO 450 (Rev. 01/09)    Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of Indiana

JACQUELINE M STERLING
*Appellant*
      Plaintiff

        v.                                    **Civil Action No.**  2:23cv349

SOUTHLAKE NAUTILUS HEALTH & RACQUET CLUB INC

AUSTGEN KUPIER & ASSOCIATES

DAVID M AUSTGEN
      Defendants

## JUDGMENT IN A CIVIL ACTION

The court has ordered that (*check one*):

☐ the Plaintiff(s),_____recover from the
Defendant(s)_____ damages in the
amount of _____, plus post-judgment interest at the rate of _____ %

☐ the plaintiff recover nothing, the action is dismissed on the merits, and the defendant _____
recover costs from the plaintiff _____.

X Other: <u>The decision of the Bankruptcy Court is AFFIRMED.   This case is DISMISSED.</u>

This action was (*check one*):

☐ tried to a jury with Judge _____
presiding, and the jury has rendered a verdict.

☐ tried by Judge _____
without a jury and the above decision was reached.:

X decided by <u>Judge Philip P. Simon.</u>

DATE:_____6/10/2024_____      CHANDA J. BERTA, CLERK OF COURT
                           by_____s/R. Figueroa_____
                                 *Signature of Clerk or Deputy Clerk*

A-19